UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Christopher-James Waldorf,

                      Plaintiff,                  Court File No. 17-cv-107 (JRT/LIB)

      v.                                       **ORDER AND**
                                   **REPORT AND RECOMMENDATION**

Mark Dayton, et al.

                    Defendants.

---

This matter came before the undersigned United States Magistrate Judge pursuant to an order of referral, [Docket No. 51], made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(B), and upon Defendants' Motions to Dismiss, [Docket Nos. 33 and 39], and Plaintiff's Motion to Amend and Restate the Complaint, [Docket No. 57]. The Motions were taken under advisement on the written submissions to the Court. (<u>See</u>, Orders, [Docket Nos. 55 and 64).

For the reasons set forth below, the Court recommends that Defendants Governor Mark Dayton, Attorney General Lori Swanson, the Honorable William J. Cashman, Rachel Schmidt, and George Lock's Motion to Dismiss, [Docket No. 33], and Defendants Janelle Kendall, Kyle Triggs, John Sanner, John Freihammer, Nate Kyollo, and Cody Vojacek's Motion to Dismiss, [Docket No. 39], be **GRANTED**.

In addition, for the reasons set forth below, the Court orders that Plaintiff Christopher-James Waldorf's Motion for Request for Leave to Amend and Restate the Complaint, [Docket No. 57], is **DENIED**.

## I. BACKGROUND AND STATEMENT OF ALLEGED FACTS[1]

On November 26, 2015, Plaintiff Christopher-James Waldorf ("Plaintiff") was driving home after a social engagement when he was pulled over by Officer Cody Vojacek of the Stearns County Sheriff's Department, who asked to see Plaintiff's driver's license and registration. (Amend. Compl., [Docket No. 28], 16-18). Plaintiff complied with the request and produced a driver's license in the name of Christopher James Waldorf.[2] (Id. at 18). Plaintiff was placed under arrest and taken into custody. (Id.). When Officer Vojacek requested that Plaintiff take a Breathalyzer test, Plaintiff asked to use the bathroom first. (Id.). Officer Vojacek denied the request and ultimately charged Plaintiff with the crime of test refusal. (Id. at 34).

Between June 10, 2016, and September 18, 2016, Plaintiff asserts that he "execute[d] all necessary actions and documents to establish himself as a foreign sovereign and to establish the Estate for which he is the Occupant of The Office of Executor (hereinafter 'Executor') as Foreign and Exempt."[3] (Id. at 11). Plaintiff then purportedly appointed certain public servants— Governor Mark Dayton; Minnesota Attorney General Lori Swanson; the Honorable William J. Cashman, Minnesota state district court judge; Rachel Schmidt, Clerk of Court for the Stearns County Minnesota state court; Janelle Kendall, Stearns County Attorney; and George Lock; the Stearns County Court Administrator—as trustees and fiduciaries of the purported Estate of

---

[1] For the purposes of the present Motion to Dismiss under Rule 12(b)(6) or Rule 12(b)(1), the Court accepts the facts alleged in the Amended Complaint (the operative complaint), [Docket No. 28], as true and construes them in the light most favorable to Plaintiffs. See, Carlsen v. Game Stop, Inc., 833 F.3d 903, 908 (2016) (stating that a facial attack on jurisdiction under Rule 12(b)(1) receives Rule 12(b)(6) protection, so a reviewing court must accept as true all facts alleged in the complaint).

[2] Plaintiff asserts that he is not Christopher James Waldorf. See, fn. 3, supra.

[3] Plaintiff asserts:

> Plaintiff :Waldorf, Christopher-James., is a private American nation[al] (a lawful man/people) that is foreign to the corporate UNITED STATES, and is the Occupant of The Office of Executor for and the Sole Beneficiary of (hereinafter "Executor") The Estate named or known as CHRISTOPHER JAMES WALDORF (hereinafter "Estate"), such Estate also foreign to the UNITED STATES and Exempt thereby, and is a free inhabitant on the land geographically identified as Stearns County, Minnesota.

(Amend. Compl., [Docket No. 28], 2-3).

Christopher James Waldorf "to help ensure the protection of the Estate and the Executor thereof." (Id. at 12-17).

On November 14, 2016, Plaintiff issued an "Executive Order" that "fully [a]ccepted" and thereby asserted to settle all of the criminal charges in Stearns County Case No. 73-CR-16-157 in exchange for an assignment to the United States of unlimited credit owed to the Estate by the United States. (Id. at 13-14; Exh. F, [Docket No. 28-2], 38). Plaintiff also ordered the purportedly appointed trustees to "advise the executor office herein identified of the settlement of this matter . . . such that the executor need not attend the meeting in this matter, currently scheduled for December 9, 2016." (Amend. Compl., [Docket No. 28], 13-14).

However, Plaintiff later became aware that the criminal matter had not been "settled," so Plaintiff went to Stearns County District Court on December 9, 2016. (Id. at 20-21). He asserts that he did not intend to appear in the criminal proceedings; rather, he went to the state district court "to remind the Trustees of their duty to settle and close the matter and advise the Executor of the same." (Id. at 21). Although there was a hearing scheduled for 10:00 a.m., it did not begin until approximately 11:45 a.m. (Id. at 24). During the hearing, Plaintiff refused to acknowledge that he was the defendant in the criminal proceedings, stating instead that he is the Executor for the Estate named or known as Christopher-James Waldorf. (Id. at 21-23). Accordingly, Judge Cashman held Plaintiff in contempt of court and ordered him taken into custody; Plaintiff was booked into the Stearns County Jail. (Id. at 23-24). Later that afternoon, Plaintiff was brought back before Judge Cashman. (Id. at 24). It appears that Plaintiff was released later that afternoon after signing an appearance bond. (Id. at 41-42).

A trial on the criminal matters was scheduled for January 24, 2017.[4] (Id. at 39).

_____

[4] Plaintiff failed to appear at his initial trial date, and a new trial date was set for May 10, 2017. (Order, [Docket No. 53], 2-3).

On January 11, 2017, Plaintiff filed his Complaint in this Court, bringing suit against Defendants Mark Dayton; Lori Swanson; the Honorable William J. Cashman; Rachel Schmidt; Janelle Kendall; Kyle Triggs, "an agent of the Stearns County Attorney"; George Lock; John L. Sanner, Sheriff of Stearns County; John Freihammer, "an agent of the office of the Sheriff of Stearns County"; Nate Kyollo, "an agent of the office of the Sheriff of Stearns County"; John and Jane Doe defendants, unnamed agents of the Stearns County Sheriff's Office; and John and Jane Roe defendants, unnamed spouses of the named defendants. (Compl., [Docket No. 1], 1-2). Plaintiff sought to bring claims against the named Defendants in both their official and individual capacities. (Id.).

Although the claims Plaintiff alleges in the present case have changed as he has amended his Complaint, the original Complaint, [Docket No. 1], set forth the following: (1) a claim under 18 U.S.C. § 241 that Defendants conspired to deprive him of "his Rights by continuing the Prosecution of the Matter after the Executor had fully Accepted the Charges and provided for settlement and closure of the Matter"; (2) a claim under 18 U.S.C. § 242 that Defendants deprived Plaintiff of "rights and immunities secured by the Constitution on account of his being alien" when (a) Freihammer and Kyollo possessed deadly weapons when they arrested Plaintiff for contempt of court and (b) Plaintiff was held in custody while in contempt of court; (3) a claim of kidnapping, in violation of 18 U.S.C. § 1201, based upon his being held in custody while in contempt of court; (4) two charges of subornation of perjury, in violation of 18 U.S.C. § 1622, based upon his allegedly being coerced into signing a notice to appear and other documents as Christopher James Waldorf; (5) a claim of peonage under 18 U.S.C. § 1581, based upon Plaintiff's arrest for contempt and his remaining in contempt until he signed the papers referenced above; (6) a claim of extortion, pursuant to 25 C.F.R. § 11.417, based upon his being

charged in the criminal case as Christopher James Waldorf; (7) a claim for misprision of felony under 18 U.S.C. § 4 for failure to stop or report the felonies charged in the prior Counts of the Complaint; (8) a claim of general "malfeasance" for Defendants' failure to comply with their asserted duties to protect the Estate and Plaintiff, as the Executor; (9) a claim for relief for "Breach of Trust and Violation of Oath" by Defendants as trustees; (10) a claim of slander against Defendant Judge Cashman, based upon Judge Cashman referring to Plaintiff as asserting that he is a sovereign citizen; (11) a similarly based claim against Judge Cashman for defamation of character; and (11) a second claim of defamation of character based upon the arrest record generated by Plaintiff's arrest for contempt of court. (Id. at 39-45). In the original Complaint, Plaintiff asked this Court for an order enjoining the prosecution in Minnesota State Court of his criminal case, exemplary damages, punitive damages, restitution, return of property, and declaratory relief. (Id. at 46).

On January 19, 2017, Chief Judge John R. Tunheim issued an Order directing Plaintiff to show why this action should not be dismissed for lack of subject matter jurisdiction. (Order, [Docket No. 19]). The Order noted that all of Plaintiffs' claims were either federal claims without a private right of action or Minnesota state-law claims for which Plaintiff had not adequately alleged jurisdiction under 28 U.S.C. § 1332. (Id. at 2-3). Finally, to the extent that Plaintiff sought "equitable relief that might interfere with pending state proceedings, the Court cautions that it is required to abstain from accepting jurisdiction over such claims unless an applicable exception to the abstention doctrine announced in Younger v. Harris, 401 U.S. 37 (1971), applies." (Id. at 3).

Also on January 19, 2017, Defendants Dayton, Swanson, Judge Cashman, Schmidt, and Lock (collectively, "State Defendants") filed a joint Motion to Dismiss, [Docket No. 12], for lack

of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

Similarly, on January 24, 2017, Defendants Kendall, Triggs, Sanner, Freihammer, and Kyollo (collectively, "County Defendants") filed a joint Motion to Dismiss, [Docket No. 21], for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).

On February 2, 2017, Plaintiff filed an Amended Complaint, adding Officer Vojacek as a named Defendant. (Amend. Compl., [Docket No. 28], 5-6). In the Amended Complaint, Plaintiff bases his claims on the same general facts, but greatly revises the claims he brings. In Count I, Plaintiff now brings a claim under 42 U.S.C. § 1983 for violation of his Eighth Amendment rights based upon the denial of his request to use the bathroom prior to taking the Breathalyzer test on November 26, 2015. (Id. at 34). Count II asserts a § 1983 claim for "Failure to Implement Appropriate Policies," alleging a policy by the Stearns County Sheriff's Department and the Stearns County Attorney's Office "to abuse their powers under the DWI section of the State of Minnesota Motor Vehicle Code to charge otherwise-likely-innocent people with any crime possible under such code." (Id. at 34-35). Count III brings a § 1983 claim for false arrest stemming from the traffic-stop-related events of November 26, 2015. (Id. at 35-36). Count IV brings a § 1983 claim for false arrest stemming from the contempt citation on December 9, 2016. (Id. at 36).  Count V brings a § 1983 claim for false imprisonment and/or unlawful detainer on December 9, 2016. (Id. at 36-37). Count VI brings a § 1983 claim for violation of Plaintiff's Fifth Amendment rights based upon Plaintiff being required to sign contracts as the defendant in the criminal proceedings to ensure his bodily freedom, despite his status as the Executor, not the defendant. (Id. at 37). Count VII brings a claim under 42 U.S.C. § 1985(3) alleging a conspiracy to deprive Plaintiff of generally asserted but unspecified "rights." (Id. at 37-38). Count VIII

alleges a claim under 28 U.S.C. § 1350 based upon Defendants' denying Plaintiff his right to immunity under 28 U.S.C. § 1604. (Id. at 38). Count IX brings another claim under 28 U.S.C. § 1350, asserting illegal denial of equitable relief to end hostilities because the criminal proceedings continue to move forward, despite Plaintiff's offer of settlement. (Id. at 38-39). Count X brings a claim for malicious prosecution under 28 U.S.C. § 1350. (Id. at 39). Count XI asserts a claim under 28 U.S.C. § 1350 for failure "to implement policies to ensure that [the State of Minnesota] and its political subdivisions do indeed honor the sovereign immunity of other rightfully immune states/nations and ensure the protection of the property of such states/nations and the officials of such states/nations." (Id. at 40). Count XII, also brought under 28 U.S.C. § 1350, alleges that Defendants have violated their sworn Oaths of Office. (Id. at 40-41). Count XIII is a claim of common law breach of fiduciary duty; Count XIV is a claim of common law conspiracy; and Count XV is a common law claim of intentional infliction of emotional harm. (Id. at 41-43). Count XVI asserts a common law defamation of character claim. (Id. at 43-44).

The relief Plaintiff seeks has also changed somewhat from the original Complaint, [Docket No. 1], to the Amended Complaint, [Docket No. 28]. Plaintiff still seeks a permanent injunction in Minnesota State District Court case No. 73-CR-16-157, compensatory damages, punitive damages, return of property, and declaratory relief. (Id. at 44). However, in the Amended Complaint, Plaintiff explicitly asserts that:

> The amount in controversy is believed to be in excess of $75,000. Plaintiff and the Estate for which he is Executor are a "foreign state" within the meaning of 28 U.S.C. § 1603(a) – (b), as demonstrated later herein. Defendants are believed to be U.S. citizens within [the] State of Minnesota.

(Id. at 8).

On February 13, 2017, Chief Judge Tunheim filed an Order recognizing that Plaintiff had "filed an Amended Complaint . . . which states a basis for subject matter jurisdiction pursuant to

28 U.S.C. § 1331" and that the Amended Complaint is now the operative complaint. (Order, [Docket No. 31], 2).

On February 17, 2017, the State Defendants filed the present Motion to Dismiss the Amended Complaint, again asking for dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and/or for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). (Motion to Dismiss, [Docket No. 33]). On the same day, the County Defendants filed a similar Motion to Dismiss on the same grounds. (Motion to Dismiss, [Docket No. 39]). On February 23, 2017, Plaintiff filed his Memorandum of Law in Opposition to the Memoranda to Dismiss. (Mem. in Opp., [Docket No. 45]). On March 3, 2017, the State Defendants filed their Reply; the County Defendants filed their Reply on March 6, 2017. ([Docket Nos. 47 and 49]).

This Court scheduled a hearing on the Motions for 10:00 a.m. on April 25, 2017, [Docket No. 52], but upon notice from Plaintiff that he was unable to attend a hearing at that date and time, the Court cancelled the Motions Hearing and took the Motions under advisement on the written submissions as of April 25, 2017. (Order, [Docket No. 55]).

On May 1, 2017, Plaintiff filed a sealed Motion for Leave to Amend and Restate the Complaint, [Docket No. 57].

On May 5, 2017, the County Defendants and the State Defendants filed Memoranda in Opposition to the Motion to Amend and Restate the Complaint. ([Docket Nos. 59 and 61]). On May 12, 2017, the Court indicated to the parties that it would take Plaintiff's Motion to Amend and Restate the Complaint, [Docket No. 57], under advisement on the written submissions only. (Order, [Docket No. 64]).

## II.     STANDARDS OF REVIEW

*Pro se* complaints are construed liberally, but they still must allege sufficient facts to support the claims advanced. See, Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004).

When considering a motion to dismiss under Rule 12(b)(6), courts "look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." Riley v. St. Louis Cty. of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir 1998)), cert. denied 525 U.S. 1178 (1999). Courts must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Aten v. Scottsdale Ins. Co., 511 F. 3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level," which "requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-57). When courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible," they may disregard legal conclusions that are couched as factual allegations. See, Iqbal, 556 U.S. at 678-81.

### III. PLAINTIFF'S MOTION TO AMEND AMENDED COMPLAINT, [Docket No. 57]

This Court will first consider Plaintiff's "Motion by Complainant Request for leave to Amend and Restate the Complaint for subsequent enrollment on the Exclusive Equity Docket," [Docket No. 57], because this Court's ruling on the Motion has the potential to change its analysis of the Motions to Dismiss also now before the Court.

The "Proposed Amended and Restated Complaint," (hereinafter referred to as the "proposed Second Amended Complaint") filed in conjunction with Plaintiff's Motion for Leave to Amend and Restate the Complaint is entitled "A Bill in Equity." (Id. at Exh. 1, [Docket No. 57-1], 1). Therein, Plaintiff no longer alleges jurisdiction based upon diversity of citizenship and an amount in controversy in excess of $75,000; instead, Plaintiff alleges that the matter arises under the federal Judiciary Acts of 1789 and 1911 and that "[t]he value of the matter in controversy here is immeasurable." (Id. at 6-7).

The proposed Second Amended Complaint also largely omits the specific factual allegations included in the original Complaint and the First Amended Complaint. (Id. at 7-11). Rather, the section of the proposed Second Amended Complaint entitled "Statement of the Facts" contains only (1) an assertion of Plaintiff's "right of self-government"; (2) a list of legal documents and authority which Plaintiff asserts he "chose as his Jurisdiction"; (3) a recitation of the purported appointment and notification of the Defendant "trustees" and their obligations as such; (4) the general assertion that Plaintiff offered the entirety of the Estate to settle the Minnesota state court criminal case, but that offer was denied; and (5) general, vague, and conclusory allegations that Defendants breached their fiduciary duties and violated Plaintiff's rights. (Id.).

The proposed Second Amended Complaint no longer includes John and Jane Doe Defendants or John and Jane Roe Defendants. (Id. at 1). It also seeks to once again alter the claims Plaintiff brings in the present case. Plaintiff now asks the Court to order Defendants "to answer this Bill fully, providing all lawful foundation for their actions if available, and if such foundation [is] not available, so admitting." (Id. at 11). Plaintiff still seeks declaratory judgment acknowledging "the substantive [and Constitutional] rights of [Plaintiff] as to self-governance and under his chosen Jurisdiction at all times." (Id. at 12). Plaintiff also appears to ask this Court to order Defendants to accept his offer to settle the ongoing Minnesota state court criminal proceedings and return all property in which Plaintiff or the Estate has a substantive right. (Id. at 12). In exchange, Plaintiff will forgive all past transgressions against the Estate and seek no financial remuneration therefrom. (Id.).

As Defendants note in their Memoranda in Opposition to the Motion, Plaintiff did not comply with the requirements of motions practice as set forth in Local Rule 7.1(b) or the more specific requirements for filing a motion to amend a pleading set forth in Local Rule 15.1(b).

"Notwithstanding Plaintiff's pro se status, Plaintiff is still bound to comply with the Local Rules of this Court." (Citation omitted). Ernst v. Hinchliff, 129 F. Supp. 3d 695, 726 (D. Minn. 2015). Despite the requirements of Local Rule 7.1, Plaintiff did not obtain a hearing date from the Court prior to filing the Motion, Plaintiff did not file a meet-and-confer statement, and Plaintiff did not file a proposed order. See, LR 7.1(a)-(b). Moreover, Plaintiff did not file "a version of the proposed amended pleading that shows – through redlining, underlining, strikeouts, or other similarly effective typographic methods – how the proposed amended pleading differs from the operative pleading," as required by Local Rule 15.1(b).

Accordingly, because Plaintiff failed to comply with the procedural requirements applicable to his Motion prior to filing it, the Court **denies** the Motion, [Docket No. 57]. <u>See</u>, <u>Rickmyer v. Browne</u>, 995 F. Supp. 2d 989, 1026 (D. Minn. 2014) (stating that it could deny a plaintiff's motion to amend for failure to file a proposed amended complaint that illustrated the differences from the operative pleading).

However, even if Plaintiff had complied with the applicable Local Rules, this Court would nevertheless deny Plaintiff's Motion, [Docket No. 57], because the amendments proposed therein would be entirely futile. "A district court's denial of leave to amend a complaint may be justified if the amendment would be futile. And while Rule 15 is broadly construed to allow amendments, district courts need not 'indulge in futile gestures.'" (Citations omitted). <u>Geier v. Missouri Ethics Comm'n</u>, 715 F.3d 674, 678 (8th Cir. 2013).

First, as Defendants note in their Memoranda in Opposition to the Motion, Plaintiff's request to change his Complaint to a "Bill in Equity" and thereby rely upon principles of equity rather than those grounded in statutory or common law is misplaced. (<u>See</u>, Mem. in Opp., [Docket Nos. 59 and 61]). Plaintiff appears to believe that because his claims will not succeed under the law, he may seek equitable relief to protect his "immeasurably" valuable "right to self-governance and his right to life, liberty, and the pursuit of happiness." (<u>See</u>, [Docket No. 57-1], 7).

As the Eighth Circuit has held, however:

Equity does not, as [Plaintiff] suggests, give courts power to make policy decisions deemed "fair" in the eyes of Article III judges. Long gone are the "roguish" days when equity varied like the size of the "chancellor's foot." To obtain equitable relief, [Plaintiff] must point to an established equitable principle. . . .

[Plaintiff] ignores one of the most fundamental principles of equity: *equitas sequiter legem* (i.e., equity follows the law). Well over a century has passed since American jurisprudence definitively established that "[c]ourts of

equity can no more disregard statutory and constitutional requirements and provisions than can courts of law."

(Citations omitted). <u>Westerman v. U.S.</u>, 718 F.3d 743, 751 (8th Cir. 2013).

Although the assertions for the Proposed Second Amended Complaint are unclear, they all appear to seek the same relief:  an Order by this Court disposing of the ongoing criminal proceedings in Minnesota state court.

Such action is prohibited by the abstention doctrine set forth in <u>Younger v. Harris</u>, 401 U.S. 37 (1971). The Unites States recently reaffirmed the doctrine, stating:  "When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution." <u>Sprint Comm'ns, Inc. v. Jacobs</u>, 134 S. Ct. 584, 588 (2013). "Abstention is appropriate in such circumstances because 'the prospect of undue interference with state proceedings counsels against federal relief." <u>Banks v. Slay</u>, 789 F.3d 919, 923 (8th Cir. 2015).

As presented in his Proposed Second Amended Complaint, Plaintiff asks this Court to enjoin the currently ongoing Minnesota state court criminal proceedings against him and grant declaratory relief.[5] Under the <u>Younger</u> abstention doctrine, this Court clearly cannot do so. <u>See</u>, <u>Night Clubs, Inc. v. City of Fort Smith, Ark.</u>, 163 F.3d. 475, 481 (8th Cir. 1998) ("In general, the <u>Younger</u> abstention doctrine 'directs federal courts to abstain from granting injunctive or declaratory relief that would interfere with pending judicial proceedings.").

Therefore, even if Plaintiff had complied with all the procedural requirements related to his Motion for Leave to Amend and Restate the Complaint, [Docket No. 57], allowing the proposed amendments at this time would be futile, and the Court would nevertheless deny the Motion.

---

[5] The Proposed Second Amended Complaint does not seek money damages; it seeks only injunctive and declaratory relief. (<u>See</u>, [Docket No. 57], 12-13).

**IV.     STATE DEFENDANTS' MOTION TO DISMISS, [Docket No. 33], and COUNTY DEFENDANTS' MOTION TO DISMISS, [Docket No. 39]**

Although the State Defendants and the County Defendants have filed separate Motions to dismiss, [Docket Nos. 33 and 39], there is significant overlap in the analysis of the Motions. Therefore, for ease of understanding, this Court addresses the Motions together.

**A.  <u>Younger</u> Abstention Doctrine**

The State Defendants argue that all of the claims asserted against them by Plaintiff as stated in the operative Amended Complaint, [Docket No. 28], should be dismissed under the <u>Younger</u> abstention doctrine. (State Defs Mem. in Supp., [Docket No. 36], 6-7). The County Defendants "adopt and incorporate by reference" any arguments by the State Defendants which are also applicable to the County Defendants. (<u>See</u>, Cty Defs Mem. in Supp., [Docket No. 41], 24-26). Plaintiff responds that the criteria of the <u>Younger</u> doctrine are not met in this case and that this is a matter for the Federal Courts because the underlying issue is whether the State courts have jurisdiction to proceed with the criminal case against Plaintiff. (Mem. in Opp., [Docket No. 45], 16-17).

As set forth above, the <u>Younger</u> abstention doctrine requires federal courts to refrain from deciding cases in which a plaintiff asks a federal court to enjoin ongoing state court criminal proceedings. <u>See</u>, <u>Doe v. Piper</u>, 165 F. Supp. 3d 789, 806 (D. Minn. 2016) (citing <u>Sprint Comm'ns, Inc.</u>, 134 S. Ct. at 588). "Abstention is appropriate in such circumstances because 'the prospect of undue interference with state proceedings counsels against federal relief.'" <u>Banks</u>, 789 F.3d at 923.

Although the State Defendants cite to a three-factor test for application of the <u>Younger</u> abstention doctrine, that case addressed the applicability of <u>Younger</u> to "noncriminal judicial

proceedings." See, Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982); see, also, (Mem. in Supp., [Docket No. 36], 6). The instant case does not involve parallel noncriminal state court proceedings, and the United States Supreme Court has more recently addressed the Younger abstention doctrine, plainly stating: "When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution." See, Sprint Comm'ns, Inc., 134 S. Ct. at 588. (Emphasis added). In any event, the case presently before the Court also satisfies the Middlesex factors. Plaintiff's state criminal matter is ongoing (the first factor); an important state interest is implicated in the state proceedings (the second factor); and Plaintiff has an adequate opportunity in those state proceedings to raise his constitutional challenges (the third factor). See, Middlesex Cty Ethics Comm., 457 U.S. at 432; see, also, (Order, [Docket No. 53], 4-6 (finding that the present case satisfies the Middlesex factors)).

In this case, Plaintiff asks this Court to enter "[a] permanent mandatory injunction as to the Prosecution of the Estate and the Executor in the Matter known as STATE OF MINNESOTA DISTRICT COURT SEVENTH JUDICIAL DISTRICT COUNTY OF STEARNS Court File # 73-CR-16-517, in full compliance with 28 USC § 1604." (Amend. Compl., [Docket No. 28]), 44).[6]

Accordingly, for the reasons set forth above, the Younger doctrine requires this Court to abstain from granting the injunctive and declaratory relief Plaintiff seeks, since it relates directly to the ongoing criminal proceedings against him in Minnesota state court. Therefore, this Court recommends that Plaintiff's claims seeking injunctive or declaratory relief be **dismissed without**

---

[6] Notably, Plaintiff has already asked the District Court in the present case to grant a preliminary injunction of the state court criminal proceedings and Chief Judge Tunheim declined to do so based upon the Younger abstention doctrine. (See, Order, [Docket No. 55]).

**prejudice** under the Younger abstention doctrine. See, Anderson v. Schultz, 871 F.2d 762, 766 (8th Cir. 1989) (stating that "dismissal without prejudice is appropriate" under Younger).

In the operative Amended Complaint, however, Plaintiff also seeks money damages. (See, Amend. Compl., [Docket No. 28], 34-44). Although the Defendants do not address the implications of a request for money damages on the application of the Younger abstention doctrine, such implications have been recognized by both the Eighth Circuit and the United States Supreme Court.

> [T]he Younger abstention doctrine "directs federal courts to abstain from granting *injunctive* or *declaratory relief* that would interfere with pending judicial proceedings." In such cases, "Younger v. Harris contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts."
> In cases where damages are sought in the federal suit, the Supreme Court instructs that traditional abstention principles generally require a stay as the appropriate mode of abstention:
>> In those cases in which we have applied traditional abstention principles to damages actions, we have only permitted a federal court to withhold action until the state proceedings have concluded, that is, we have permitted federal courts applying abstention principles in damages actions to enter a stay, but we have not permitted them to dismiss the action altogether.
>
> [Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 730 (1996)]. The Court in Quackenbush noted one exception, and thus preserved the limited holding of Fair Assessment in Real Estate Ass'n, Inc. v. McNary, 454 U.S. 100 (1981), where the Court allowed a dismissal on abstention principles of a section 1983 damages case, because the award of damages would have first required a declaration that a state tax scheme was unconstitutional.

(Emphasis in original.) (Citations omitted.) Night Clubs, Inc., 163 F.3d at 481-82. The Eighth Circuit further explained that "the very limited holding of Fair Assessment" applied only to allow dismissal when awarding damages would "require us to first declare unconstitutional a state statute or overturn a state court judgment on a matter of state policy." Id. at 482. Here, awarding damages would not require either of these actions. Therefore, the Younger abstention

doctrine authorizes dismissal of the requests for declaratory and injunctive relief only, leaving Plaintiff's claims in which he seeks monetary damages still before this Court.

> When monetary damages are sought in addition to injunctive relief and the federal court is not asked to declare a state statute unconstitutional in order to award damages, the case should not be dismissed. As long as there may be issues which will need to be determined in federal court, a stay rather than a dismissal is the preferred procedure to use in abstaining.

(Citations omitted.) Yamaha Motor Corp., U.S.A. v. Stroud, 179 F.3d 598, 603-04 (8th Cir. 1999).

However, because Plaintiff's claims in which he seeks monetary damages fail to survive the present Rule 12(b)(6) Motions for reasons independent of the Younger abstention doctrine, the Court need not stay the proceedings and may instead recommend dismissal of the action in its entirety.

**B. Claims which Seek Monetary Damages**

**1. Official-Capacity Claims which Seek Monetary Damages from the State Defendants (Counts IV through XVI)**

The State Defendants (the Honorable William J. Cashman, Governor Mark Dayton, Attorney General Lori Swanson, Rachel Schmidt, and George Lock) argue that the Eleventh Amendment bars Plaintiff's claims against them in their official capacities which seek monetary damages. (State Defs. Mem. in Supp., [Docket No. 36], 8-10). In his response to the State Defendants' Motion to Dismiss, Plaintiff clarifies that he "has not requested damages under any Defendant's Official capacity." (Response, [Docket No. 45], 17). Therefore, based upon Plaintiff's representation that he is not seeking monetary damages from any of the State Defendants in their official capacities, the Court will not further consider this argument, and it

recommends **dismissal with prejudice** to the extent the operative Second Amended Complaint could be liberally construed otherwise.

### 2. Official-Capacity Claims which Seek Monetary Damages from the County Defendants under 42 U.S.C. § 1983 (Counts I through VI)

Although Plaintiff's blanket statement that he "has not requested damages under any Defendant's official capacity," (Response, [Docket No. 45], 17), could be interpreted to apply to the County Defendants as well, the statement was made within the section of Plaintiff's Response dedicated solely to the State Defendants. Therefore, the Court will consider Plaintiff's § 1983 claims against the County Defendants in their official capacities which seek money damages.

Section 1983 establishes a cause of action against any "person who, under the color of any statute, ordinance, regulation, custom, or usage, of any state" causes the deprivation of a federal or Constitutional right. 42 U.S.C. § 1983. "To recover under § 1983, a plaintiff must prove '(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." McDonald v. City of St. Paul, 679 F.3d 698, 704 (8th Cir. 2012).

In Counts I through VI, Plaintiff brings official-capacity claims seeking money damages under 42 U.S.C. § 1983 against County Defendants Kendall, Triggs, Sanner, Freihammer, Kyollo, and Vojacek, all of whom are officials of either the Stearns County Attorney's Office or the Stearns County Sheriff's Department. (Amend. Compl., [Docket No. 28], 4-5). More specifically, Count I alleges that Defendant Vojacek violated Plaintiff's Eighth Amendment rights; Count III alleges false arrest by Defendant Vojacek on November 26, 2016; Count IV alleges a claim against Defendants Triggs and Freihammer (along with certain State Defendants)

for false arrest on December 9, 2016, after Plaintiff was found in contempt of court; Count V alleges a claim against Defendants Triggs, Freihammer, and Kyollo (along with certain State Defendants) for false imprisonment, also based upon the events of December 9, 2016; Count VI alleges a claim against Defendant Triggs (along with certain State Defendants) for violation of Plaintiff's Fifth Amendment rights, based upon the Defendants requiring him to "testify against himself, and even more egregiously to bear false witness in such testimony, and to sign commercial contracts under a false identification, all so that Plaintiff could secure his bodily freedom." (Id. at 36-37).

> Official capacity suits "generally represent only another way of pleading an action against an entity of which the officer is an agent." [Monell v. Dept. of Social Servs. of City of New York, 436 U.S. 658, 690 n.55 (1978)]. "[T]he real party in interest in an official capacity suit is the governmental entity named and not the named official." Hafer v. Melo, 502 U.S. 21, 25 (1991). An official capacity suit requires proof that a policy or custom of the governmental entity was the moving force behind the violation of federal law. Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Wilson v. Miller, 86 F. Supp. 3d 1027, 1034 (D. Minn. 2015). "Stated another way, a local government is liable under § 1983 only where a *policy or custom* of that entity caused the alleged constitutional violation." Hester v. Redwood County, 885 F. Supp. 2d 934, 994 (D. Minn. 2012).

In the Amended Complaint, Plaintiff states:

> It was the policy of the STEARNS COUNTY SHERIFFS DEPARTMENT and of the STEARNS COUNTY ATTORNEY'S OFFICE to abuse their powers under the DWI section of the STATE OF MINNESOTA Motor Vehicle Code to charge otherwise-likely-innocent people with any crime possible under such code. Indeed OFFICER CODY VOJACEK received multiple awards from the DEPARTMENT for his DWI Arrests, incenting him to manufacture charges where none were possible based on actual physical evidence, such that he would choose to charge one with "Test Refusal" upon their request to conduct a bodily function.

(Amend. Compl., [Docket No. 28], 35). This is the only specific allegation made by Plaintiff in the operative Amended Complaint which even generally refers to a policy or custom which

caused the County Defendants' allegedly illegal actions.[7] However, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Even considering the Amended Complaint as a whole, in the light most favorable to Plaintiff, and drawing all reasonable inferences in Plaintiff's favor, the singular bald assertion that a policy existed is merely "a legal conclusion couched as a factual allegation, which this Court is not bound to accept as true. See, Iqbal, 556 U.S. at 678.

Plaintiff has not pled sufficient factual allegations to support a plausible claim that any of the alleged violations of federal statutory or constitutional law brought in the present action as official capacity federal claims were caused by a specific policy or custom of the Stearns County Sheriff's Department or the Stearns County Sheriff's Office, the two entities of which the named County Defendants are agents. Therefore, the Court recommends **dismissal without prejudice** of Plaintiff's § 1983 claims (Counts I through VI) against the County Defendants in their official capacities which seek money damages.

### 3. Individual-Capacity Claims which Seek Monetary Damages

#### a. Defendants Dayton, Swanson, and Sanner

In the operative Second Amended Complaint, [Docket No. 28], Plaintiff does not specify which, if any, claims he seeks to bring against Defendants Dayton, Swanson, and Sanner in their individual capacities. (See, Sec. Amend. Compl., [Docket No. 28], 34-44). However, construing the Second Amended Complaint liberally, it appears that Plaintiff seeks to bring against

---

[7] Notably, it is within Count II, in which Plaintiff brings a claim based on the Stearns County Sheriff's Department and the Stearns County Attorney Office's alleged "Failure to Implement Appropriate Policies." (Emphasis added). (Amend. Compl., [Docket No. 28], 34-35). However, Plaintiff has not named either the Stearns County Attorney's Office or the Stearns County Sheriff's Department as Defendants in this action. Therefore, the claim in Count II is not further addressed herein, and the Court recommends **dismissal without prejudice** as to Count II, because even liberally construing the Amended Complaint otherwise Count II fails to state a claim upon which relief could be granted pursuant to Rule 12(b)(6), for the reasons set forth in section IV.B.2.

Defendants Dayton and Swanson the claims identified in Counts VII through XVI, and Plaintiff seeks to bring against Defendant Sanner the claims identified in Counts XI, XII, XIII, XV, and XVI. For reasons set forth later in this Report and Recommendation, this Court recommends dismissal without prejudice of Counts VII through XII for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), see, section IV.B.3.g, supra, and this Court recommends dismissal without prejudice of Counts XIII through XVI because they are pendent claims based solely on alleged violations of Minnesota state law, see, section IV.B.3.h, supra. Accordingly, the Court does not within the present section of this Report and Recommendation further address the viability of any individual-capacity claims against Defendants Dayton, Swanson, or Sanner which seek monetary damages.

### b. Judicial Immunity

The State Defendants argue that Plaintiff's individual-capacity claims seeking money damages against Defendant the Honorable William J. Cashman (Counts IV through X and Counts XII through XVI) are wholly barred by judicial immunity. (State Defs Mem. in Supp., [Docket No. 36], 18-20).

> It is well-settled that judges of general jurisdiction are not liable in civil actions based on claims of their misconduct during the performance of their judicial functions. Stump v. Sparkman, 435 U.S. 349, 355-56 (1978). Like other forms of official immunity, judicial immunity is immunity from suit, not just from the ultimate assessment of damages. Mireles v. Waco, 502 U.S. 9, 11 (1991). Only two circumstances avoid judicial immunity:  (1) if the judge is being sued for actions that were not taken in the judge's judicial capacity, or (2) if the judge is being sued for actions taken "in the complete absence of jurisdiction." Id. at 11-12.

Grazzini-Rucki v. Knutson, No. 13-cv-2477 (SRN/JSM), 2014 WL 2462855, *17 (D. Minn. May 29, 2014).

In the present case, on the face of the Amended Complaint, Judge Cashman is entirely immune from suit because Plaintiff plainly seeks to sue Judge Cashman based upon actions Judge Cashman took while acting in his capacity as a state court judge in a criminal case over which Judge Cashman had jurisdictional authority.[8] Even reading the Amended Complaint as a whole, construing it liberally, taking all facts pled within it as true, and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has failed to make any sufficient factual allegations that support a plausible claim to avoid judicial immunity and bring suit against Judge Cashman.

Therefore, this Court recommends **dismissal with prejudice** of Plaintiff's claims against the Honorable William J. Cashman, as those claims are barred by judicial immunity.

### c. Prosecutorial Immunity

County Defendants Kendall and Triggs argue that they are entitled to absolute prosecutorial immunity from the claims brought against them in this suit.[9] (Cty Defs Mem. in Supp., [Docket No. 41], 6-8). Plaintiff responds that prosecutorial immunity does not protect Defendants Kendall and Triggs because they had fiduciary duties as trustees of the estate which required certain actions on their part. (Response, [Docket No. 45], 4-5).

---

[8] Plaintiff's assertion that Judge Cashman lacked jurisdiction over him because Plaintiff is a "foreign sovereign" is no more than a conclusory legal statement "'couched as a factual allegation.'" (See, Amend. Compl., [Docket No. 28], 9). See, Iqbal, 556 U.S. at 678. Therefore, Plaintiff has failed to sufficiently plead facts to support a plausible claim that Judge Cashman lacked jurisdiction over Plaintiff's criminal proceedings, which would void Judge Cashman's judicial immunity from suit.

[9] The Court notes that prosecutorial immunity does not bar official-capacity claims, and Plaintiff has brought claims against Defendants Kendall and Triggs in both their official and individual capacities. See, Lewis v. Clarke, 137 S. Ct. 1285, 1292 (2017) (stating that absolute prosecutorial immunity is a "personal" immunity defense which may be raised in an individual-capacity action, as opposed to defenses available in official-capacity actions, such as sovereign immunity). Therefore, contrary to Defendants Kendall and Triggs' arguments, prosecutorial immunity will not completely bar Plaintiff's claims against them; at best, prosecutorial immunity will bar Plaintiff's claims against Defendants Kendall and Triggs in their individual capacities. However, for the reasons previously stated in this Report and Recommendation, see, section IV.B.3.c., supra, the Court also recommends dismissal of Plaintiff's claims against Defendants Kendall and Triggs in their official capacities which seek money damages. Therefore, Defendants Kendall and Triggs' misplaced reliance on prosecutorial immunity to shield them from all of the claims against them does not affect the ultimate recommendation of this Report and Recommendation.

"Prosecutors enjoy absolute immunity in their review of and decisions to charge a violation of the law. Absolute immunity protects prosecutors against claims arising from their initiation of a prosecution and presenting a criminal case 'insofar as that conduct in "intimately associated with the judicial phase of the criminal process."'" (Citations omitted.) <u>Sample v. City of Woodbury</u>, 836 F.3d 913, 916 (8th Cir. 2016). "Where an official's challenged actions are protected by absolute immunity, dismissal under Rule 12(b)(6) is appropriate." (Citation omitted). <u>Id.</u>

In the Amended Complaint, Plaintiff identifies Defendant Kendall as "OCCUPANT OF THE STEARNS COUNTY ATTORNEY and in such capacity is a duly Appointed Trustee of the CHRISTOPHER JAMES WALDORF, Estate."[10] (Amend. Compl., [Docket No. 28], 4). Plaintiff identifies Defendants Triggs as "an AGENT FOR JANELLE P. KENDALL in THE OFFICE OF THE STEARNS COUNTY ATTORNEY." (<u>Id.</u>). Plaintiff further alleges in the Amended Complaint that Defendant Triggs was present as an "agent" of Defendant Kendall for the proceedings on December 9, 2016, and that Defendants Kendall and Triggs "did nothing to protect The Estate and The Executor thereof and to prevent the continued prosecution of the Matter and persecution of the Executor." (<u>Id.</u> at 20-21, 23, 25). Plaintiff apparently purports to base his claims against Defendants Kendall and Triggs on their decisions to continue the criminal prosecution of Plaintiff and on Plaintiff's assertion that Defendants Kendall and Triggs "did instead Arrest Plaintiff and charge The Estate/Trust with Contempt." (<u>Id.</u> at 36-43).

---

[10] The Court further notes that Plaintiff has failed to allege any specific facts showing personal involvement by Defendant Kendall in the actions upon which Plaintiff bases his claims; instead, Plaintiff bases his claims against Defendant Kendall on actions taken by her "agent," Defendant Triggs. For that reason alone, the Court could recommend dismissal of Plaintiff's § 1983 claims against Defendant Kendall. <u>See</u>, <u>Jackson v. Nixon</u>, 747 F.3d 537, 544 (8th Cir. 2014) ("To state a claim under § 1983, the plaintiff must plead that a government official has personally violated the plaintiff's constitutional rights. . . . [T]he doctrine of respondeat superior does not apply to § 1983 cases.").

Specifically, Plaintiff brings the following claims against Defendants Kendall and Triggs: Count IV false arrest (based upon Plaintiff's arrest for contempt of court on December 9, 2016); false imprisonment (based upon the same); violation of the Fifth Amendment (based upon allegations that Defendant Triggs forced Plaintiff to sign papers in the name Christopher James Waldorf on December 9, 2016); civil conspiracy, "denial of equitable relief to end hostilities," breach of fiduciary duties, intentional infliction of emotional harm, and defamation of character (all based upon the failure to settle the criminal matter); denial of immunity to which Plaintiff contends he was entitled in the criminal matter; malicious prosecution; failure to implement policies to ensure that Plaintiff's sovereign immunity was honored; and violation of their oaths of office. (Amend. Compl., [Docket No. 28], 36-43).

Plaintiff's claims against Defendants Kendall and Triggs are unquestionably based upon actions or omissions in their roles in the initiation and prosecution of the state criminal charges against Plaintiff. Although some of Plaintiff's claims against Defendants Kendall and Triggs purport to be based upon Defendants Kendall and Triggs' failures to uphold their duties as alleged fiduciaries of the estate asserted by Plaintiff, Defendants Kendall and Triggs' purported roles as fiduciaries are directly dependent upon their positions as prosecutors.[11] Moreover, the alleged breaches of fiduciary duty consist of Defendants Kendall and Triggs' continued prosecution of Plaintiff despite Plaintiff's attempts to "settle" the matter.

Similarly, although claims that allege a defect in administrative duty such as the failure to develop a certain policy are <u>not</u> barred by prosecutorial immunity, <u>see</u>, <u>Sample</u>, 836 F.3d at 916, Plaintiff's claim that Defendants Kendall and Triggs failed in their administrative duty to develop a policy to guarantee that sovereign rights are honored is "directly connected with the

---

[11] It is important to note here that the undersigned does not intend to suggest that there is any merit as to Plaintiff's assertions, the reference here is provided only as context.

conduct of a trial" in that Plaintiff's sovereign rights "constitute[] an essential element" of Plaintiff's claim. Plaintiff argues that his state criminal prosecution is unlawful due to his special status as a foreign sovereign; therefore, the alleged failure by Defendants Kendall and Triggs to develop policies recognizing such a status as alleged by Plaintiff so as to preclude their decision to prosecute is protected by absolute immunity. See, Van de Kamp v. Goldstein, 555 U.S. 335, 344 (2009) (finding absolute immunity barred claims against district attorney and her chief assistant based upon an assertion that they failed to develop policies related to providing impeachment-related information to defense attorneys).

Because the actions upon which Plaintiff bases his claims against Defendants Kendall and Triggs are directly and intimately related to their roles as prosecutors and the decisions made by Defendants Kendall and Triggs in the state criminal prosecution of Plaintiff, prosecutorial immunity bars Plaintiffs claims as articulated in the Amended Complaint against Defendants Kendall and Triggs in their individual capacities.

Accordingly, the Court recommends **dismissal with prejudice** of Plaintiff's claims against Defendants Kendall and Triggs in their individual capacities which seek monetary damages (Counts IV through XVI), as those claims are barred by prosecutorial immunity.

### d. Qualified Immunity for State Defendants (Counts IV-VII)

To the extent that Plaintiff seeks monetary damages from State Defendants Schmidt and Lock in their individual capacities, the State Defendants argue that they are entitled to dismissal of the § 1983 claims against them (Counts IV through VII) under the doctrine of qualified immunity. (State Defs. Mem. in Supp., [Docket No. 36], 7-8). In response, Plaintiff merely contends generally that qualified immunity does not protect the State Defendants because they

"have established no aspect of Qualified Immunity which relieves them of their Constitutional Oath or such Oath of their superior." (Response, [Docket No. 45], 17).

The allegations in Counts IV through VII are as follows: Count IV brings a claim of false arrest against Defendants Schmidt and Lock based upon Plaintiff's arrest for contempt of court on December 9, 2016; Count V brings a claim of false imprisonment against Defendants Schmidt and Locke based upon the same events; and Count VI brings a claim that Defendants Schmidt and Lock violated Plaintiff's Fifth Amendment rights by requiring him to "testify against himself, and even more egregiously to bear false witness in such testimony, and to sign commercial contracts under a false identification, all so that Plaintiff could secure his bodily freedom." (Amend. Compl., [Docket No. 28], 36-37). It appears evident that Count VI is based upon Plaintiff being required to sign "a Release Order and a Notice to Appeal" under the name Christopher James Waldorf on December 9, 2016. (See, Id. at 28).

> Qualified immunity shields a government official acting in his individual capacity from liability "unless his conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'"

(Citations omitted.) Thompson v. Shock, 852 F.3d 786, 790 (8th Cir. 2017).

"To overcome the defense of qualified immunity, a plaintiff must show that: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a [federal] constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'" Mallak v. City of Brainerd, No. 13-cv-2119 (DWF/LIB), 2017 WL 440249, *10 (D. Minn. Feb. 1, 2017) (quoting Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010).

Plaintiff claims that Defendant Schmidt received the Plaintiff's self-prepared and self-described "Executive Notice" by which Plaintiff sought to resolve the criminal proceedings against him and that Defendant Schmidt was present for the state court proceedings on December 9, 2016, but "did nothing to protect the Estate and the Executor thereof and to prevent the continued prosecution of the Matter and persecution of The Executor." (Amend. Compl., [Docket No. 28], 15, 21-23, 25).[12] Plaintiff acknowledges that Defendant Lock "was not present in the room" during the state court proceedings on December 9, 2016, but nevertheless alleges that "in his capacity as COURT ADMINISTRATOR [Lock] was no doubt with knowledge as to the Matter and its status, as he is Signatory on at least one Contract made later that day." (Id. at 21).

Once again, these general and mere conclusory statements are not sufficient to support a plausible federal claim against Defendants Schmidt and Lock. Despite Plaintiff's conclusory assertion that Defendants Schmidt and Lock were appointed by him as trustees of the estate of Christopher James Waldorf, Plaintiff has not established that such an appointment was clearly established under federal statutory or constitutional law as of December 9, 2016. Plaintiff has not pled "factual content that allows the court to draw the reasonable inference that [Defendants Schmidt and Lock are] liable for the misconduct alleged." See, Iqbal, 556 U.S. at 678.

Even reading the Amended Complaint as a whole, construing it liberally, taking all the facts pled within it as true, and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has failed to make any sufficient factual allegations to support a plausible claim that any action by Defendants Schmidt and Lock as alleged within the Amended Complaint violated a federal statutory or constitutional right that was clearly established at the time of the deprivation.

---

[12] See, fn #11, p.24, supra.

Accordingly, this Court recommends **dismissing with prejudice** Plaintiff's individual-capacity federal claims (in Counts IV-VII) to the extent that they are brought against Defendants Rachel Schmidt and George Lock and seek monetary damages, as these claims are barred by qualified immunity.

### e. Qualified Immunity for County Defendant (Counts I-VI)

### (i) Defendant Vojacek

Similarly, the County Defendants allege that Defendant Vojacek is shielded from suit under qualified immunity because Plaintiff has failed to show the violation of a clearly established right. (Cty Defs Mem. in Supp., [Docket No. 41], 6). Plaintiff generically responds that Vojacek violated the clearly established "right to conduct human bodily functions[, which] is such a basic human right that indeed it is not included in the Constitution for the [U]nited States of America nor in statute." (Response, [Docket No. 45], 4). Plaintiff also contends that he has a "right not to be charged with a crime merely for making a request to conduct such a function" which is "far, far beyond any rights that the Constitutional authors felt necessary to elucidate." (Id.).

Contrary to Plaintiff's assertions, "[q]ualified immunity shields a government official acting in his individual capacity from liability "unless his conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" (Emphasis added.) (Citations omitted.) See, Thompson, 852 F.3d at 790. Plaintiff admits that the right he asserts was violated by Defendant Vojacek in Count I ("the right to human bodily function") is not a statutory or constitutional right. Therefore, Defendant Vojacek is entitled to qualified immunity to the extent that Plaintiff seeks monetary damages from him in his individual capacity through Count I.

In Count III, Plaintiff seeks to bring a § 1983 claim for false imprisonment based upon Vojacek's request for Plaintiff's driver's license at the time of the traffic stop on November 26, 2015. Even construing the Complaint liberally, the only constitutional or statutory right Plaintiff alleges was violated by this action was the "right to travel," which Plaintiff alleges renders a valid driver's license unnecessary. This argument has been soundly and repeatedly rejected by the Federal Courts, and this Court sees no need to belabor the point here. It is well-established that regulation of driving through requiring a driver's license is not an unconstitutional impairment of one's right to travel. See, e.g., Triemert v. Washington County, No. 13-cv-1312 (PJS/JSM), 2013 WL 6729260, *7-10 (D. Minn. Dec. 19, 2013) (collecting cases and finding requirement of a driver's license does not unconstitutionally impede the right to travel). Therefore, Plaintiff has failed to sufficiently allege a clearly established constitutional or statutory right which Defendant Vojacek violated on November 26, 2015, and, thus, Defendant Vojacek is entitled to qualified immunity against the claims in Count III.

Accordingly, the Court recommends that Counts I and III be **dismissed with prejudice** as they are brought only against Defendant Vojacek and seek injunctive and declaratory relief (which are prohibited by the Younger abstention doctrine), as well as, monetary damages against Defendant Vojacek in his official capacity (for which as described supra Plaintiff has failed to show the allegedly illegal behavior was caused by any official custom or policy) and in his individual capacity (for which Defendant Vojacek is entitled to qualified immunity).

### f. Quasi-Judicial Immunity for County Defendants Freihammer and Kyollo (Counts IV and V)

The County Defendants also argue that Defendants Freihammer and Kyollo are entitled to quasi-judicial immunity. (Cty Defs Mem. in Supp., [Docket No 41], 8). Plaintiff argues the

opposite, claiming that there can be no quasi-judicial immunity here where Judge Cashman was generally alleged to have acted outside his jurisdictional authority. (Response, [Docket No. 45], 5). This Court has already rejected Plaintiff's challenge to Judge Cashman's jurisdictional authority to preside over Plaintiff's state criminal prosecution.

The Eighth Circuit has "not hesitated to extend absolute immunity to other officials for acts taken pursuant to a facially valid court order." Penn v. U.S., 335 F.3d 786, 789 (8th Cir. 2003). "A judge's absolute immunity extends to public officials for '"acts they are specifically required to do under court order or at a judge's direction."'" (Citation omitted.) Martin v. Hendren, 127 F.3d 720, 721 (8th Cir. 1997). The Eighth Circuit has explicitly extended this immunity to bailiffs "for actions 'specifically ordered by the trial judge and related to the judicial function,'" including "obeying specific judicial commands to restore order in the courtroom." Id.

In the present case, Defendants Freihammer and Kyollo are named in Counts IV (a claim of false arrest due to Plaintiff's arrest for contempt of court on December 9, 2016) and Count V (a claim of false imprisonment based upon the same events). (See, Amend. Compl., [Docket No. 28], 36-37). These claims are premised entirely upon the factual allegations that on December 9, 2016, Defendant Freihammer, at the direction of Judge Cashman, attempted to convince Plaintiff to come before the bar to present his statement during the proceedings and when Plaintiff refused, Defendant Freihammer, again at the direction of Judge Cashman, placed Plaintiff under arrest for contempt of court. (Amend. Compl, [Docket No. 28], 21, 23). Later that day, also at Judge Cashman's direction, Defendants Freihammer and Kyollo brought Plaintiff back to the courtroom and stood next to Plaintiff, wearing multiple deadly weapons. (Id. at 24-25).

The actions by Defendants Freihammer and Kyollo upon which Plaintiff bases his claims against them were unmistakably undertaken at the direction of Judge Cashman, as Plaintiff

specifically acknowledges in his Amended Complaint. (See, e.g., Amend. Compl., [Docket No. 28], 24 (stating that Plaintiff was brought back to the courtroom "upon the request of Defendant-Trustee CASHMAN")). Moreover, those requests were given in order to maintain and restore order to the courtroom, which is closely related to the judicial function. Therefore, under Martin, 127 F.3d at 721, Defendants Freihammer and Kyollo are entitled to quasi-judicial immunity from the claims Plaintiff now attempts to bring against them.

Accordingly, this Court recommends that Counts IV and V be **dismissed with prejudice** to the extent that Plaintiff seeks monetary damages from Defendants Kyollo and Freihammer in their individual capacities, as those claims are barred by quasi-judicial immunity.

### g. Failure to Sufficiently Allege Violations of Federal Statutory or Constitutional Rights (Counts VII-XII)

After consideration of the Defendants' arguments regarding the Younger abstention doctrine, the feasibility of § 1983 claims seeking monetary damages against the County Defendants in their official capacities, and the applicability of judicial immunity, quasi-judicial immunity, prosecutorial immunity, and qualified immunity, the Court is left with Plaintiff's federal claims brought pursuant to 42 U.S.C. § 1985(3) and 28 U.S.C. § 1350 (Counts VII through XII), as well as, Plaintiff's state-law claims (Counts XIII through XVI). The State and County Defendants argue that the remaining federal claims should also be dismissed as a matter of law for failure to state a claim under Rule 12(b)(6). (State Defs Mem. in Supp., [Docket No. 36], 11-12; Cty Defs Mem. in Supp., [Docket No. 41], 16-20).

**(i)     Count VII:  "Conspiracy to Deprive of Rights"**

Count VII brings a claim against Defendants Cashman, Schmidt, Lock, and Triggs for civil conspiracy pursuant to 42 U.S.C. 1985(3). (Amend. Compl., [Docket No. 28], 37). To allege a conspiracy in violation of § 1985(3), Plaintiff must allege

> (1) that the defendants conspired, (2) with the intent to deprive [him] of equal protection of the laws, or equal privileges and immunities under the laws, (3) that one or more of the conspirators did, or caused to be done, any act in furtherance of the object of the conspiracy, and (4) that [he] was injured or deprived of having and exercising any right or privilege of a citizen of the United States.
> For the first element, [Plaintiff] must "allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." Mere speculation or conjecture is insufficient to prove a civil conspiracy.

(Citations omitted.) Mendoza v. U.S. Immigration and Customs Enforcement, 849 F.3d 408 (2017).

Although at this stage of the proceedings in the instant case, where this Court is considering Rule 12(b)(6) Motions to Dismiss, Plaintiff need not prove his case, Plaintiff nevertheless must at least sufficiently allege facts which would plausibly support such a claim. Plaintiff has failed to do so. Plaintiff has made no specific factual allegation supporting his mere legal conclusions that "Defendants Cashman, Schmidt, Lock, Kendall, and Triggs did intentionally conspire to deprive Plaintiff of his Rights by not settling and closing the matter as was provided for." As a mere conclusory allegation, this statement is not sufficient to sustain a claim of conspiracy under § 1985(3) in the face of a Rule 12(b)(6) challenge. See, Iqbal, 556 U.S. at 678.

In his Response to the Motions to Dismiss, Plaintiff again merely offers only conclusory statements in support of Count VII, arguing that because "several of [the Defendants] work together each and every day in the STEARNS COUNTY DISTRICT COURT and at least two of Defendants are a dedicated Clerk/Judge pair," it is unbelievable "that all State Defendants and

County Defendants did entirely independently decide to violate the very Oath they or their superiors made upon first accepting and occupying the Office each holds, and to commit breach of fiduciary duty." (Response, [Docket No. 45], 18). This mere conclusory assertion likewise does not constitute a specific factual allegation sufficient to support a plausible claim of conspiracy under § 1985(3).

Even reading the Amended Complaint as a whole, taking all purported factual allegations therein as true, considering them in the light most favorable to Plaintiff, and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has failed to make any sufficient specific factual allegations to support a plausible claim of conspiracy by Defendants Cashman, Schmidt, Lock, Kendall, and Triggs that would violate 42 U.S.C. § 1985(3).

Therefore, the Court recommends that Count VII be **dismissed without prejudice** for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).

### (ii)    Counts VIII-XII

Counts VIII through XII assert claims for "Denial of Immunity," "Denial of Equitable Relief to end Hostilities," "Malicious Prosecution," "Failure to Implement Policies," and "Violation of Oath," all purportedly brought as actions pursuant to 28 U.S.C. § 1350. (Amend. Compl., 38-41). 28 U.S.C. § 1350, also known as the Alien Tort Statute, provides: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."

Defendants argue that these claims must fail as a matter of law because 28 U.S.C. § 1350 does not provide a private cause of action. (State Defs Mem. in Supp., [Docket No. 36], 12; Cty Defs Mem. in Supp., [Docket No. 41], 19). In his Response, Plaintiff claims that "he is a foreign state/Estate" and argues that he has shown torts were committed in violation of Emmerich de

Vattel's work "The Law of Nations," so he has brought his claims properly under 28 U.S.C. § 1350. (Response, [Docket No. 45], 10-11, 18). The County Defendants further challenge "The Law of Nations" as an acceptable source to establish laws which could give rise to claims under the Alien Tort Statute. (Cty Defs Mem. in Supp., [Docket No. 41], 20).

Even without considering whether or not there is any validity to Plaintiff's assertion that he is a foreign state or estate, Plaintiff's claims under the Alien Tort Statute do fail as a matter of law. First, Plaintiff's citation to Emmerich de Vattel's philosophical work "The Law of Nations" and Plaintiff's designation of this work as defining the basis for his claims is unpersuasive. Plaintiff has provided no viable legal authority for his assertion that the "The Law of Nations" creates legal rights actionable under the Alien Tort Statute. To the contrary, "[c]ourts, in 'the context of the [Alien Tort Statute], . . . have consistently used the term "customary international law" as a synonym for the term the "law of nations."'" (Citation omitted). <u>United States v. Balbuena-Peguero</u>, Criminal No. 16-656 (ADC), 2017 WL 1399696, *6 (D. P.R. April 18, 2017). The reference within the Alien Tort Statute to "the law of nations" is a reference to customary international law, not a reference to the title of a specific publication. Moreover, more to the point of the present matter, the United States Supreme Court has clearly held that the Alien Tort Statute does not create a private right of action; it is a jurisdictional statute only. <u>See</u>, <u>Sosa v. Alvarez-Machain</u>, 542 U.S. 692, 712 (2004).

Therefore, the Court recommends that Counts VIII-XII be **dismissed with prejudice** for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).

### h. Remaining State-Law Claims (Counts XIII-XVI)

The remaining claims (Counts XIII through XVI) bring claims purportedly based in Minnesota state law, not federal law. Count XIII alleges common law breach of fiduciary duty,

Count XIV alleges common law conspiracy, Count XV alleges intentional infliction of emotional harm, and Count XVI alleges defamation of character. (Amend. Compl., [Docket No. 28], 40-44).

The State Defendants argue that this Court should dismiss the state-law claims because Plaintiff's federal claims are not viable for the reasons stated above, and therefore the Court should exercise its discretion to decline to continue to exercise pendent jurisdiction over the state-law claims. (State Defs Mem. in Supp., [Docket No. 36], 12-13).[13]

The Court agrees.

Since this Court recommends the dismissal of all of Plaintiff's federal statutory and constitutional claims alleged under 28 U.S.C. § 1350, 42 U.S.C. § 1983, and 42 U.S.C. § 1985, this Court also recommends **declining** to exercise its discretion to continue to maintain pendent jurisdiction over Plaintiff's Minnesota state-law claims. See, Barstad v. Murray Cty, 420 F.3d 880, 888 (2005) (stating that when all federal-law claims are eliminated prior to trial, the balance of the factors relevant to an exercise of pendent jurisdiction generally point toward declining to exercise jurisdiction over any remaining state-law claims).

Therefore, this Court recommends **dismissing without prejudice** Plaintiff's pendent claims which are based solely on alleged violations of Minnesota state law.

IV.     **CONCLUSION**

A.  Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

---

[13] The State Defendants also argue, in the alternative, that they are immune to Plaintiff's state-law claims, that Plaintiff's state law claims will fail on their merits as a matter of law, and that Defendants Dayton, Swanson, and Lock, are not proper Defendants in the present action. (State Defs Mem. in Supp., [Docket No. 36], 13-22). Similarly, the County Defendants argue that the state-law claims will fail on their merits as a matter of law. (Cty Defs Mem. in Supp., [Docket No. 41], 20-27). Because the Court agrees that it should not exercise its discretion to continue to exercise pendent jurisdiction over the state-law claims in the absence of viable federal claims, the Court need not address the State Defendants' alternative substantive arguments.

1. Plaintiff's Motion for Request for Leave to Amend and Restate the Complaint, [Docket No. 57], is **DENIED.**

B. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants Governor Mark Dayton, Attorney General Lori Swanson, the Honorable William J. Cashman, Rachel Schmidt, and George Lock's Motion to Dismiss, [Docket No. 33], be **GRANTED;**

2. Defendants Janelle Kendall, Kyle Triggs, John Sanner, John Freihammer, Nate Kyollo, and Cody Vojacek's Motion to Dismiss, [Docket No. 39], be **GRANTED;**

3. Plaintiff's claims which seek declaratory or injunctive relief against all Defendants be **DISMISSED without prejudice;**

4. All of Plaintiff's claims against the Honorable William J. Cashman be **DISMISSED with prejudice;**

5. Plaintiff's claims which seek monetary damages against Governor Mark Dayton, Attorney General Lori Swanson, Rachel Schmidt, and George Lock in their official capacities be **DISMISSED with prejudice;**

6. Plaintiff's claims which seek monetary damages against Rachel Schmidt and George Lock in their individual capacities be **DISMISSED with prejudice;**

7. Plaintiff's claims which seek monetary damages against Janelle Kendall, Kyle Triggs, John Sanner, John Freihammer, Nate Kyollo, and Cody Vojacek in their official capacities be **DISMISSED without prejudice;**

8. Plaintiff's claims which seek monetary damages against Janelle Kendall, Kyle Triggs, John Freihammer, Nate Kyollo, and Cody Vojacek in their individual capacities be **DISMISSED with prejudice;**

9. All of Plaintiff's claims in Count VII be **DISMISSED without prejudice;**

10. All of Plaintiff's claims in Counts VIII through XII be **DISMISSED WITH PREJUDICE;** and

11. All of Plaintiff's claims in Counts XIII through XVI be **DISMISSED without prejudice.**

Dated: June6, 2017

s/Leo I. Brisbois
The Honorable Leo I. Brisbois
United States Magistrate Judge

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).